IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Windsor W. Kessler, III,<br>    Plaintiff,<br><br>v.<br><br>Mr. Vaughn, et al.,<br>    Defendants. | )<br>)<br>)<br>)    1:15cv735 (GBL/JFA)<br>)<br>)<br>) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court upon review of plaintiff's amended complaint. Windsor W. Kessler, III, a federal inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging several violations of his constitutional rights. In deference to plaintiff's pro se status, this Court construes his complaint as a civil action seeking relief pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff has applied to proceed in forma pauperis in this action. Upon review of plaintiff's amended complaint, plaintiff's claim against the United States of America for a violation of Federal Tort Claims Act ("FTCA") will proceed, and plaintiff's claims against all other defendants must be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim.[1]

---

[1] Section 1915A provides:
    (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
    (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
        (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
        (2) seeks monetary relief from a defendant who is immune from such action which plaintiff asserts is a federal offense.

## I.

Plaintiff names over twenty (20) individuals as defendants in his amended complaint. Plaintiff specifically alleges that on or about November 14, 2012, he broke his tibia and fibula while exercising in the recreation yard at a prison facility in New York. Dkt. No. 31, ¶ 1. Defendants employed by the New York prison arranged for plaintiff to be transported to a nearby hospital, at which point plaintiff was prescribed two, ten milligram Percocet pills to be taken every 4-6 hours and informed by hospital staff he would need surgery "within days." Id. ¶¶ 3-4. Plaintiff asserts that back at his New York prison, his prescription was changed to five milligram Percocet pills, and also that defendants negligently delayed his surgery date until November 23, 2012. Id. ¶¶ 5, 7. Plaintiff further alleges that he did not receive adequate post-surgical care at the New York prison, and that as a result of poor care, he needed "a second surgery." Id. ¶¶ 11-19. After his second surgery, plaintiff was transferred by bus to another facility, and he alleges that he was treated improperly in New York and Pennsylvania during the transfer. Id. ¶ 22.

On March 20, 2013, plaintiff arrived at FCI Petersburg Medium in Virginia. Id. ¶ 23. Upon his arrival, plaintiff claims that defendants employed by FCI Petersburg improperly assigned him to a middle bunk bed and improperly denied him an appropriate ankle brace for his injured foot. Id. ¶¶ 25, 27. Plaintiff allegedly then reinjured his foot at FCI Petersburg, and he was again dissatisfied with the follow-up care and alleged lack of treatment for his foot injury. Id. ¶¶ 28-32. Plaintiff asserts that on January 10, 2014, he had another surgery to remove the screws and plates from his first surgery, and because of defendants' alleged negligence in the course of his post-surgical care and treatment, plaintiff developed MRSA. Id. ¶ 40.

Additionally, plaintiff alleges that defendants falsified information on an incident report

related to plaintiff allegedly fighting with an undisclosed person on February 5, 2014 at FCI Petersburg. Id. ¶ 38. Plaintiff contends that instead of reviewing the incident report within five days as policy requires, defendants delayed plaintiff's hearing until March 2014, and upon a guilty finding, plaintiff was transferred into the Special Housing Unit ("SHU"). Id. ¶¶ 38-39.

Finally, plaintiff claims that between October 2014 and May 2015, he experienced serious joint and stomach pain, which defendants at FCI Petersburg repeatedly ignored. Id. ¶¶ 53-56. Then in September 2015, upon review of his medical records, plaintiff realized that his Bilirubin levels had been increasing over time. Id. ¶ 57. As a result of those rising levels, plaintiff alleges that he is in need of "immediate testing," which defendants have allegedly denied him by postponing. Id. ¶ 59.

Plaintiff's Amended Complaint consists of claims for cruel and unusual punishment in violation of Plaintiff's Eighth Amendment rights, violation of Plaintiff's right to due process under the Fourteenth Amendment, and violation of the Federal Tort Claims Act. Id. at Sec. V. He seeks monetary and injunctive relief. Id. at Sec. VI.

## II.

Plaintiff's amended complaint consists of numerous allegations of negligence and constitutional violations that occurred in Brooklyn, New York and Philadelphia, Pennsylvania. Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, dismissal is proper when a district court is unable to exercise personal jurisdiction over a party. Fed. R. Civ. Pro. 12(b)(2). The modern approach for personal jurisdiction requires the Defendant to have established minimum contacts with the forum state so as not to offend traditional notions of fair play and substantial justice. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Plaintiff's Amended Complaint alleges no facts relevant to establishing that the named defendants who allegedly

violated his rights in New York or Pennsylvania had contacts with Virginia, nor that any of the alleged unlawful conduct of those defendants occurred within Virginia. Because this Court only maintains personal jurisdiction against defendants at FCI Petersburg, the Court is unable to hear all of plaintiff's claims against the New York and Pennsylvania defendants regarding the first surgery, the alleged inadequate medical treatment, and the transfer.

### III.

To state a claim under § 1915A(b)(1), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id. at 678, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 55.

### IV.

In his amended complaint, plaintiff appears to allege several employees at FCI Petersburg failed to provide him with adequate medical treatment. To state a claim of improper medical treatment that rises to a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, a plaintiff must satisfy two distinct elements to show that he is entitled to relief. First, he must provide evidence to show that he suffered from a sufficiently serious

medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating medical treatment, or if a lay person would recognize the need for medical treatment. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)); see also Cooper v. Dyke, 814 F.2d 941, 945-46 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Brown v. District of Columbia, 514 F.3d 1279, 1284 (D.C. Cir. 2008) (concluding that the "intense and often relentless pain" associated with untreated gallstones is sufficiently serious); but see Hall v. Holsmith, 340 F. App'x. 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need).

Second, a plaintiff must allege that the defendant acted with deliberate indifference to his serious medical need. To act with deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation; instead, plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part by Farmer, 511 U.S. 825; see also Estelle, 429 U.S. at 106. In other words, a plaintiff must show that defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851 (citations omitted). To act with deliberate indifference, a defendant must have actual knowledge of the potential risk of harm to an inmate; the mere fact that the defendant should have known of the risk is not sufficient to constitute deliberate indifference. See, e.g., Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a

very high standard – a showing of mere negligence will not meet it.").

Plaintiff's allegations fail to state a claim for wrongful denial of medical care because his allegations do not establish that any defendant acted with deliberate indifference to his serious medical needs. Plaintiff's allegations concerning his joint and stomach pain are insufficient to establish that he had a serious medical need. Likewise, plaintiff's speculations about his rising Bilirubin levels are also insufficient to establish a serious medical need. There is no indication that plaintiff has any medical expertise or experience, and it is clear from his complaint and amended complaint that he has an extensive history of physical grievances.

Even assuming without deciding that plaintiff's foot issues meet the first element of having a sufficiently serious medical need, plaintiff does not state how any of the named defendants denied him adequate care with regard to his foot injury and re-injury that allegedly occurred at FCI Petersburg. At most, plaintiff's conclusory allegations show that he disagreed with FCI Petersburg staff about the course of his medical treatment; however, this is nothing more than a disagreement over plaintiff's course of treatment, which is insufficient to establish a denial of medical care claim. See Wright, 766 F.2d at 849. As such, his allegations related to his foot injury fail to meet the second element of an Eighth Amendment claim for denial of medical care. See Daniels, 474 U.S. at 328. Plaintiff's allegations fail to assert anything more than negligence by any of the named defendants. Accordingly, he has failed to state a claim for which relief can be granted, and his claims must be dismissed.

## V.

Plaintiff also appears to allege that some of the named defendants violated his right to Due Process. The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving an individual of life, liberty, or property without due process of law. A prisoner's

liberty interest is generally limited to being free from conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). Specifically, a prisoner has protection against the arbitrary imposition of punishment by prison officials. See Wolff v. McDonnell, 418 U.S. 539, 558 (1974). He thus has a constitutionally protected interest in the procedural due process protections of a disciplinary hearing. Prisoners have a protected liberty interest in the procedural protections provided in prison disciplinary hearings. In these hearings, an inmate's due process rights are satisfied when he receives advance notice of the charges against him, receives written findings of the outcome of the hearing, and is able to call witnesses on his behalf. Id. at 561-68. However, a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984).

Plaintiff has not provided sufficient information to state a claim upon which relief may be granted. Plaintiff relies on the mere assertion that the hearing was conducted outside the five day timeline the prison policy affords, but such a delay would not of itself amount to a constitutional violation because plaintiff concedes that defendants gave plaintiff adequate notice and an opportunity to be heard. Further, plaintiff concedes that defendants pronounced him guilty after that hearing in accordance with prison policy and due process requirements. Dkt. No. 31, ¶¶ 38-39, 44-46. Therefore, taking plaintiffs facts as alleged, defendants conducted the hearing pursuant to the constitutional requirements of the Due Process Clause. Therefore, plaintiff's conclusory claims alleging that he was improperly placed in segregation, must be dismissed, for failure to state a claim.

## VI.

At this juncture, plaintiff's only remaining claim is against the United States of America for a violation of his rights under the Federal Tort Claims Act. Plaintiff has submitted an application to proceed in forma pauperis, paid an initial filing fee of $90.00, and has agreed to make subsequent payments, pursuant to 28 U.S.C. § 1915(b), until he has paid the full $350.00 filing fee. Plaintiff's institution supplied information on plaintiff's inmate account reflecting that, for the past six months, plaintiff had an average monthly deposit of $420.00 to his inmate account, had an average monthly balance of $35.36, and a balance of $0.01 at the time of inquiry. Because plaintiff has already paid $90.00, any additional initial filing fee will be waived. Plaintiff will be required monthly to remit to the Clerk twenty percent (20%) of any income into the plaintiff's inmate account, if that income causes his inmate account balance to exceed $10.00. 28 U.S.C. § 1915(b)(2). This shall continue until the full filing fee has been paid, even after the case is resolved or dismissed, if necessary.

## VII. Conclusion

Plaintiff's claim will proceed against the United States of America, and the remainder of plaintiff's claims against all other defendants must be dismissed pursuant to § 1915A(b)(1) for failure to state a claim. An appropriate Order will issue.

Entered this __18th__ day of __July__ 2016.

Alexandria, Virginia

/s/
Gerald Bruce Lee
United States District Judge